HARRIS, C.M., Associate Judge,
dissents:
I dissent.
I view the majority opinion as unwisely expanding the limited holding in Brown v. State, 454 So.2d 596 (Fla. 5th DCA 1984).
The ruling in Brown was that if the State, in its case, proved the defense of self-defense, a judgment of acquittal should be granted at the close of the State’s case. The Brown court clearly relied on the fact that there was no conflict in the evidence:
... All the witnesses agreed that the defendant was backing up during all this time pleading with Williams to stay away, and that there was no room for defendant to turn and run because Williams was very quick and very strong and was virtually on top of the defendant when the last shot was fired. The witnesses further all testified that Williams would have jumped defendant had defendant turned to run. (Emphasis added.)
Brown at 597.
In the case at bar, the majority acknowledges that there is a conflict in the evidence. And while the majority at one point refers to Miss Brisbane’s testimony as “equivocal,” it never holds that she was an incompetent witness or that her testimony was unworthy of belief.
The majority opinion quotes at length the testimony of certain defense witnesses referring to said testimony as “being supportive of defendant’s testimony” and as being “positive testimony” as opposed to Miss Brisbane’s vague testimony.
The majority opinion thus weighs the testimony of the witnesses and finds that the “positive” testimony of the defense wit *637 ness established the defense of self-defense as a “matter of law.”
Although the defense witnesses were thoroughly impeached by the State on cross-examination, thus bringing their credibility into question, the majority opinion denies the jury the right to totally disregard such testimony and thus rely solely on the testimony of Miss Brisbane. It is clear from the jury’s verdict that they regarded the testimony of the defense witnesses as contrived and incredible rather than “positive” as found by the majority opinion.
Miss Brisbane was an 11-year-old who witnessed this violent episode. While her testimony was not as clear as it could have been, nevertheless the jury observed her demeanor, heard her responses, weighed her testimony with the other evidence and believed her. It is apparent from the verdict that the jury believed from Miss Brisbane’s statement that “I didn’t see it,” when considered with her testimony describing the scene of the event and her vantage point, that she meant the events described by the defendant and his defense witnesses did not occur.
The jury observed the defense witnesses. They heard a principal defense witness, Johnny Eastham, refute his statement given by him to the police five days after the shooting:
Just after these statements: “Okay, Jimmy went back to the truck?” being the question, “he walked back to my truck, reached in, grabbed his gun; he put it in his back pocket; he walked back toward the white boy — I mean the black boy — .”
This statement was properly before the jury and was totally inconsistent with Mr. Eastham’s and defendant’s testimony at trial.
It is the jury that should weigh the credibility of the witnesses and not this court. Unless Miss Brisbane’s testimony established the defense of self-defense, in which case the judgment of acquittal should have been entered at the close of the State’s case and not at the close of the evidence, then the jury should decide if the defense was negated “beyond a reasonable doubt.”